UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| KATHLEEN C. HAMPTON )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>PROF-2013-S3 LEGAL TITLE TRUST, )<br>BY U.S. BANK NATIONAL ASSOCIATION, )<br>AS LEGAL TITLE TRUSTEE, )<br>BANK OF AMERICA, N.A., SUCCESSOR )<br>BY MERGER TO BAC HOME LOANS )<br>SERVICING, LP FKA COUNTRYWIDE )<br>HOME LOANS SERVICING, LP, )<br>FANNIE MAE, INVESTOR, )<br>MORTGAGE ELECTRONIC )<br>REGISTRATION SYSTEMS, INC. )<br>AKA "MERS," )<br>COUNTRYWIDE HOME LOANS, INC., )<br>A NEW YORK CORPORATION DBA )<br>AMERICA'S WHOLESALE LENDER )<br>AND DOES 1 THROUGH 100 INCLUSIVELY )<br>)<br>And )<br>)<br>FAY SERVICING, LLC, AS SERVICING )<br>AGENT AND ATTORNEY-IN-FACT FOR )<br>PROF-2013-S3 LEGAL TITLE TRUST, )<br>BY U.S. BANK NATIONAL ASSOCIATION, )<br>AS LEGAL TITLE TRUSTEE, )<br>SAMUEL I. WHITE, P.C., AS ORIGINAL )<br>AND SUBSTITUTE TRUSTEE, AND PRIOR )<br>SUBSTITUTE TRUSTEES WITTSTADT )<br>TITLE & ESCROW COMPANY, LLC, )<br>AND SHAPIRO BROWN & ALT, LLP )<br>      Defendants. ) | CASE NO. 1:15CV1624<br>LMB/MSN<br><br>COMPLAINT FOR TRO<br>AND FOR DECLARATORY RELIEF<br>[Civil Code §3422; Code Civil<br>Procedure 526,527] |

1

# **APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF**

COMES NOW, Plaintiff, Kathleen C. Hampton and files *Verified Emergency Petition for Temporary Restraining Order and/or Preliminary Injunction, and Declaratory Relief* against the listed Defendants. A temporary restraining order is appropriate to maintain the status quo. Plaintiff's home will be sold and Plaintiff is subject to eviction actions, without immediate relief of this Court.

### A. **PARTIES**

1. Plaintiff is now, and at all times relevant to this action, a resident of the County of LOUDOUN, Commonwealth of VIRGINIA.

2. At all times relevant to this action, Plaintiff has owned the Property located at 34985 Snickersville Turnpike, Round Hill, Virginia 20141 (hereinafter "the property").

3. Defendant , PROF-2013-S3 Legal Title Trust, by U.S. Bank National Association, as Legal Title Trustee (hereinafter "PROF"), is a National Banking Association, doing business in the County of Loudoun, Commonwealth of Virginia. Plaintiff is further informed and believes, and thereon alleges that PROF, is the Originator of the current loan. Plaintiff is informed and believes, and thereon alleges that Defendant PROF, is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this complaint.

4. Defendant, U.S. Bank National Association (hereinafter "US Bank"), is Legal Title Trustee for securitized trust PROF. Plaintiff is informed and believes, and thereon alleges that, Defendant US BANK, is a national banking association doing business in

the County of Loudoun, Commonwealth of Virginia, and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more particularly described in this Complaint.

5. Defendant, Fay Servicing, LLC. (hereinafter FAY), is a corporation doing business in the County of Loudoun, Commonwealth of Virginia, and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust as more particularly described in this Complaint.

6. Defendants, Bank of America, NA, successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP (hereinafter BOFA), Fannie Mae, as purported investor (hereinafter FANNIE), and Countrywide Home Loans, Inc., a New York Corporation dba America's Wholesale Lender, the true Originator of the loan (hereinafter CW) are the purported Depositors/Beneficiaries from the sale/assignment of the loan. Plaintiff is informed and believes, and thereon alleges that, Defendants BOFA, FANNIE and CW are all doing business in the County of Loudoun, Commonwealth of Virginia, and are the purported Depositors/Beneficiaries for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this complaint.

7. Defendant, Mortgage Electronic Registration Systems, Inc., aka MERS (hereinafter MERS), is a corporation duly organized and existing under the laws of the Commonwealth of Virginia, whose last known address according to Plaintiff's records is 1901 E. Voorhees St, Suite C, Danville, IL 61834. Plaintiff is further informed and

believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Mortgage/Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust, as more particularly described in this complaint.

8. Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued here as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

9. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint ventures' of the remaining Defendants Samuel I. White, P.C. (hereinafter WHITE), Wittstadt Title & Escrow Company, LLC (hereinafter WITTSTADT), and Shapiro Brown & Alt, LLP (hereinafter SHAPIRO), as Original and Substitute Trustees, as named in this Complaint, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## B. INTRODUCTION

10. On or about June 9, 2006, (hereinafter "closing date"), Plaintiff entered into a consumer credit transaction with CW, a $391,800.00 mortgage loan secured by

4

Plaintiff's principal residence (the property), which is more specifically described as:

> All that certain lot or parcel of land together with the improvements thereon located in Loudoun County, Virginia, more particularly described as follows:
>
> All of Lot 3, Section 2, Parkview Estates, as the same is duly dedicated, platted and recorded among the land records of Loudoun County, Virginia, in Deed Book 490, page 512 and described as:
>
> Beginning at an iron pipe in the Southerly right of way line of Route #734 (40 feet wide), corner to Strayer, said pipe being further located as lying northwesterly approximately 0.4 miles from the intersection of Routes #734 and 719; thence leaving Route #734 and running with Strayer South 37 degrees 52' 00" West 344.75 feet to a 30 inch stump, South 16 degrees 37' 00" West 338.77 feet to a 3 inch dogwood tree, North 76 degrees 21' 00" West 469.34 feet to a fence post, South 32 degrees 02" 30" West 662.92 feet to a fence post, and North 65 degrees 17' 00" West 105.14 feet to an iron pipe in the line of Galbraith; thence leaving Strayer and running with Galbraith North 12 degrees 01' 40" East 624.69 feet to a fence post, North 78 degrees 21' 00" West 132.36 feet to a larger oak tree, and north 12 degrees 41' 00" East 768.56 feet to a fence post, corner to lot 3, Section 2, PARKVIEW ESTATES; thence leaving Galbriath and running with said Lot 3 and dedicated area (for purposes of widening the road) North 37 degrees 00' 00" East 339.72 feet to a point in the southerly right-of-way line of Route #734; thence running with the southerly right of way of Route #734, generally as described by the following bearings and distances; South 54 degrees 48' 00" East 293.31 feet, South 57 degrees 14' 00" Est 249.31 feet, South 50 degrees 37' 00" East 218.45 feet, and South 44 degrees 49' 00" East 242.84 feet to the point of beginning, containing 5.24 acres of land, more or less, according to a survey made by Loudoun Engineering and Surveys, C.L.S., dated May 19,1969, of record in the Clerk's Office of the Circuit Court of Loudoun County, Virginia, in Deed Book 502 at Page 53.
>
> Being the same real estate conveyed to Gwendolyn M. Cullen, by Deed dated June 13, 1969, recorded among the land records of Loudoun County, Virginia, in Deed Book 502, page 51.
>
> And further being the same real estate conveyed to Kathleen C. Hampton, by Deed from Gwendolyn M. Cullen, dated July 28, 2005, recorded July 29, 2005, among the land records of Loudoun County, Virginia, Instrument Number 20050729-0083785.
> NOTE: Deed re-recorded to correct legal description as Instrument Number 200510170116773.
>
> The improvements thereon being known as 34985 Snickersville Turnpike, Round Hill, VA 20141

The deed of trust/mortgage was recorded as document 20060614-0052490 on June 14, 2006, in the official records of Loudoun County, Virginia. This deed of trust/mortgage is referred to in this complaint as "the deed of trust/mortgage," and the property described in the deed of trust/mortgage is referred to as "the property." A copy of the deed of trust/mortgage is attached, marked Exhibit A, and incorporated by reference.

11. Defendant PROF did NOT cause to be recorded a Notice of Assignment of Deed of Trust from BOFA establishing its ownership in the Note in the official records of Loudoun County, Virginia, before filing only a Substitution of Trustee to WHITE alleging that they are the present holder or authorized agent of the holder of the Note secured by the deed of trust/mortgage. Defendant PROF did NOT cause to be recorded a notice of default in the official records of Loudoun County, Virginia, alleging that a breach of the obligation secured by the deed of trust/mortgage had occurred as required by law.[1]

12. Defendants, each of them, intend to see having given notice, the sale of the property. Unless restrained, defendants, and each of them, will thus sell the property or cause the property to be sold. This sale would be to Plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief, in that Plaintiff having no right to redeem the property from the sale, will forfeit the property if the sale takes place.

### C. FACTUAL ALLEGATIONS

13. For years mortgage brokers and lenders have been selling loan products that they knew, or should have known, would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead,

---

[1] See *Bliss v. NEW YORK Co-op.* Procedures, 30 Cal.2d 240, 244-246. 181 Fd2d 369, 170ALR 1009 (1947).

6

borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

14. The loan product sold to Plaintiff in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiff of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff faces the potential of losing her home to the very entity and entities that placed her in this position.

15. On or about June 6, 2006, the closing date, Plaintiff entered into a consumer credit transaction with CW by obtaining a $391,800 mortgage loan secured by Plaintiff's principal residence, 34985 Snickersville Turnpike, Round Hill, Virginia 20141. This note was secured by a Deed on the property in favor of CW.

16. The terms of the finance transactions with CW are not clear or conspicuous, nor consistent, and are illegal which violates several statutes and in essence creates an illegal loan. Further, this loan was underwritten without proper due diligence by CW as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns. CW also used a "GDW Cost of Savings" as the Index for the basis of this loan, because the lender controls this Index and it is directly based upon the average rate of interest CW parent company.

17. In addition, CW illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan which CW knew, or should have known, that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's stated Income only. Had CW used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining, comply with the requirement to provide Plaintiff with Mortgage Loan Origination Agreement, the debt to income ratio, Plaintiff would not have qualified for the loan in the first place. Consequently, CW sold Plaintiff's loan product that it knew, or should have known, would never be able to be fully paid back by Plaintiff. CW ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without regard for Plaintiff's rights, sold Plaintiff a deceptive loan product.

18. From 1998 until the financial crash of 2008-2009, over 60 million home loans were sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

19. Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for the selling of the loans was to create a situation whereby certain tax laws known as Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

20. How a particular mortgage loan ended up being transferred to a REMIC Trust in the securitization process is governed by a contract known as a Pooling and Servicing Agreement (PSA). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions. Plaintiff's PSA required at minimum this chain of title:

| Originator/Lender | Sponsor/Seller | Depositor | Issuing Entity | REMIC Trustee |
|---|---|---|---|---|
| CW | CW | CW | BOFA | FANNIE |

21. A "True Sale" of the loan would be a circumstance whereby one party owned the note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be endorsed to the next party by the previous assignee of record.

22. In order for the Trustee of the Securitized REMIC Trust to have a valid and enforceable secured claim against Plaintiff's Home, the Trustee must prove and certify to all parties that, among other things under the PSA:

> a. There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transactions (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and Transfers were completed prior to the Trust closing dates (see discussion below); and

> b. The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Plaintiff alleges that the Trust cannot demonstrate that it had perfected its security interest in Plaintiff's Home, that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case.

23. Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and endorse to the Trustee for the Securitized Trust, without recourse, including

all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Plaintiff's herein and all other mortgage loans identified by PSA.

24. Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to:

   a. The splitting or separation of title, ownership and interest in Plaintiff's note and Deed of Trust of which the original lender is the holder, owner and beneficiary of Plaintiff's Deed of Trust;
   b. When the loan was sold to each intervening entity, there were no Assignments of the Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;
   c. The failure to assign and transfer the beneficial interest in Plaintiff's Deed of Trust to BOFA and/or PROF, in accordance with the PSA of the Defendants, as Securitization Participants;
   d. The failure to endorse, assign and transfer Plaintiff's Note and/or mortgage to Defendants BOFA and/or PROF, in accordance with PSA;
   e. No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under VIRGINIA law, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and
   f. Defendants, and each of them, violated the pertinent terms of the PSA.

25. Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the Deed of Trust, CW (the original lender herein) committed fraud in altering the Deed of Trust after it was signed by Plaintiff; recorded an altered description of the property set forth in the Deed of Trust, which from the original sale was incorrect and placed a "Cloud on Title" and on which Fidelity National Title Insurance Company (hereinafter FIDELITY) had been solicited to correct via claim by Plaintiff and Plaintiff has informed Defendants of such claim but Defendants have chosen to ignore.

FIDELITY has not as yet been able to correct said Deed Description, which is complicated by the "metes and bounds" listed therein include 22+ adjoining acres of properties adjacent to the property of Plaintiff, owned by two separate neighboring properties, and with a standing "Cloud on Title," Defendants should not be allowed to proceed with any foreclosure or trustee sale.

26. Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the Deed of Trust, CW also committed fraud and violations of TILA and RESPA since Rescission documents, as well as HUD Statements, were never provided/sent to Plaintiff and Plaintiff had only seen those documents through BOFA's attorney Blank Rome's response dated 12-31-14 submitted to Plaintiff's attorney, for which Plaintiff did not receive until January 2015. It was through those documents that Plaintiff discovered that the loan was an interest only arm for ten years per amortization table supplied therein (not the five years she was informed in the initial Good Faith Estimate given and signed prior to closing date); and at closing date, various other documents were not provided to Plaintiff, as required by law.

27. Plaintiff is informed and believes, and thereon alleges, that BOFA and FAY and the other Defendants listed as Servicing Agents and Trustees have violated regulations relative to the HAMP Act, wherein Plaintiff qualified for a HAMP modification, being only two months delinquent and having the hardships required to qualify, and never offered that HAMP modification since BOFA, in response to Plaintiff's complaint filed with the President of the United States and handled by Consumer Financial Protection Bureau, admitted to only offering a "traditional modification," which Plaintiff found to be incorrect, incomplete, unaffordable and therefore unacceptable and

most importantly not done under the HAMP program under which she had applied. Had BOFA complied with the governing regulations regarding the HAMP at that time (July 29, 2009), this case would not be before this court. Subsequently, Plaintiff filed under the Independent Foreclosure Review and under its guidelines, BOFA should have provided the same HAMP modification that Plaintiff should have received years before, but again was not offered the same. Plaintiff has for six years complied with all requirements regarding the HAMP modification, but BOFA continued to NOT follow through with all the guidelines/procedures set out by laws and regulations established. Further, the new servicer FAY and newly assigned trustee WHITE have not followed proper mandated procedures set out by laws and regulations established regarding foreclosures/trustee sales and completely skipped the HAMP guidelines, as required by the Independent Foreclosure Review's findings and guidelines. Plaintiff has supporting documentation to support such allegations upon trial.

28. Plaintiff is informed and believes, and thereon alleges, that BOFA and FAY have still not applied all credits of payments and Plaintiff has disputed all Notice of Default regarding their incorrect figures/default payment totals. BOFA also caused Plaintiff to file bankruptcy claiming it was a necessity to qualify under HAMP, thereby destroying her excellent credit; and further, although still in the modification process during bankruptcy, BOFA failed to offer the HAMP modification and reaffirm the debt. Plaintiff has been in the modification process for over six years and BOFA and now FAY and their Appointed Trustees have made several attempts for foreclose without following foreclosure procedures and according to the HAMP modification process were not permitted to do so.

29. Plaintiff is informed and believes, and thereon alleges, that CW sold Plaintiff's personal information relative to the refinance loan and the deed of trust in mid year 2008 after a modification request failed and it is believed that some of the information regarding this may apply to this case. Plaintiff did opt out of a Class Action suit against CW, reserving her right to file suit on her own at a later date.

30. Plaintiff is informed and believes, and thereon alleges, that since the original sale in 2005 with CW, Plaintiff was burdened with payments in excess of $3000/month and at the refinance in 2006 with payments in excess of $2500/month on a $375,000 purchase of the property; Plaintiff was never given "peaceful, quiet enjoyment" of the property not only due to the above, but also due to an encroaching builder and the necessity of dealing with County Officials, spanning a two year period, in addition to all the above misdealings and failures of the defendants herein. It was believed that purchasing the property (that Plaintiff had already been in possession of for the prior ten years) would extend that enjoyment, but Plaintiff alleges herein that has not been the case.

### D. THE STANDARD FOR INJUNCTIVE RELIEF IS SATISFIED

#### 1. FORECLOSURE TRO'S:

31. Injunctive or declaratory relief may be available to prevent an improper private sale of encumbered property on such grounds as that there is no actual default justifying the sale (*Bisno v. Sax* (1959, 2nd Dist) 175 CalApp2d 714, 346 P2d 814) that the secured transaction is itself invalid (*Daniels v Williams* (1954) 125 CalApp2d 310, 270 P2d 556), or that inadequate notice of default was given. (*Lupertino v. Carbalah*

(1973, 3rd Dist) 35 CalApp3d 742, 111 Cal Rptr 112) This relief may also be available to resolve a dispute as to the amount of the default. (*More v. Calkins* (1890) 85 Cal 177, 24 P729).

## 2. PRELIMINARY INJUNCTION:

32. In deciding whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood the Plaintiff will prevail on the merits of its case at trial, and (2) the interim harm the Plaintiff is likely to sustain if the injunction is denied, as compared to the harm the Defendants are likely to suffer if the court grants a preliminary injunction. *Buckland v. Threshold Enterprises, Ltd.,* 155 CalApp4th 798, 66 Cal. Rptr. 3d 543 (2d Dist. 2007), as modified (Oct. 22, 2007).

## 3. TEMPORARY RESTRAINING ORDER:

33. Trial courts should evaluate two interrelated factors when deciding whether to issue a restraining order: The first is the likelihood that the plaintiff will prevail on the merits at trial, and the second is the interim harm that the plaintiff is likely to sustain if the restraining order is denied, as compared to the harm that the defendants are likely to suffer if the order is issued. *Church of Christ In Hollywood v. Superior Court,* 99 CalApp4th 1244, 121 Cal. Rptr. 2d 810 (2d Dist. 2002).

### E. PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS AT TRIAL

34. The foreclosure sale and/or any further transfer of ownership or encumbrance must be enjoined because the evidence elicited demonstrates that Plaintiff will succeed on the merits at trial. Plaintiff has successfully alleged twelve causes of action against Defendants in this case, including violations of TILA and RESPA; Fraud; Unfair and Deceptive Business Practice; Unconscionability; violations of

the HAMP Act; violations of the guidelines under the Independent Foreclosure Review; violations of regulations/procedures regarding foreclosures/sales; and Quiet Title.

35. An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties. Plaintiff contends that her note and deed of trust were not transferred and/or assigned pursuant to Plaintiff's loan's PSA and/or VIRGINIA Law; that Defendants violated Federal TILA and RESPA laws, as well as committed fraud in the indictment and concealment at the initiation of the loan; that Defendants violated regulations regarding HAMP modifications, Independent Foreclosure Review guidelines, and violated procedures on foreclosure/sales of the property. A judicial declaration is necessary and appropriate at this time under all the circumstances at the initiation of the loan. A judicial declaration is necessary and appropriate at this time under all the circumstances so that Plaintiff may determine her rights and duties under the note and deed of trust, specifically.

36. At the very basis of Plaintiff's Complaint, based upon the facts outlined here and above, Plaintiff has alleged and can demonstrate at trial that Defendants breached their PSA contract and through misrepresentation are about to foreclose on Plaintiff's real property, and that because of the securitization process Defendants and their predecessors in interest failed to properly assign Plaintiff's Mortgage note and Deed of Trust according to state law and the PSA governing the original loan.

### PRAYER

**WHEREFORE,** Plaintiff requests judgment as follows:

1. A temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, Defendants' agents, attorneys, and

representatives, and all persons acting in connection or participating with them, from selling, attempting to sell, or causing to be sold, the property, either under the power of sale in the deed of trust/mortgage or by foreclosure action.

2. A declaration by the Court that sale of the property to enforce the deed of trust/mortgage is improper in that Plaintiff has raised a claim that the Defendants do not legally hold the note or deed of trust and/or do not have right to foreclose on the subject property;

3. Peaceful, quiet enjoyment of the property;

4. Costs of suit; and

5. Any further relief that the Court may deem just and equitable.

Dated: __12-4-15__

_Kathleen C. Hampton_
Kathleen C. Hampton, pro se

## VERTIFICATION

I am the Plaintiff in this action. I have read the foregoing complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe are true.

I declare under penalty of perjury under the laws of the Commonwealth of Virginia that the foregoing is true and correct.

Date of Execution: __12-4-15__

_Kathleen C. Hampton_
PLAINTIFF

_M. Hutzler_
NOTARY

[Notary seal: MICHELE LISA HUTZLER, NOTARY PUBLIC, REG # 7570100, MY COMMISSION EXPIRES 10/31/2018, COMMONWEALTH OF VIRGINIA]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_KATHLEEN C. HAMPTON_
Plaintiff,

v.

Civil Action No. _1:15CV1624_

_PROF-2013-S3 LEGAL TITLE TRUST, ET AL._
Defendant.

## CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of this document.

_KATHLEEN C. HAMPTON_
Name of *Pro Se* Party (Print or Type)

_Kathleen C. Hampton_
Signature of *Pro Se* Party

Executed on: _12-4-15_ (Date)

**OR**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)